# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT W. PETRONE, | ) | CASE NO. 5:13-cv-02187 |
| | ) | |
| Petitioner, | ) | JUDGE JACK ZOUHARY |
| | ) | |
| v. | ) | MAGISTRATE JUDGE GREG WHITE |
| | ) | |
| JASON BUNTING, Warden | ) | |
| | ) | |
| Respondent. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

Petitioner, Robert W. Petrone ("Petrone"), challenges the constitutionality of his

conviction in the case of *State v. Petrone*, Stark County Court of Common Pleas Case No. 2010-

CR-1481.  Petrone, represented by counsel, filed his Petition for a Writ of Habeas Corpus (ECF

No. 1) pursuant to 28 U.S.C. § 2254 on October 3, 2013.  On April 15, 2014, the Court granted

Petrone's motion for stay and abeyance.  (ECF Nos. 7, 11.)  On April 20, 2015, the Court granted

Petrone's motion to lift the stay.  (ECF No. 12.)  On May 10, 2015, Petrone filed a supplement to

his petition.  (ECF No. 13.)  On August 11, 2015, Warden Jason Bunting ("Respondent") filed

his Answer/Return of Writ.  (ECF No. 17.)  Petrone filed a Traverse on October 7, 2015.  (ECF

No. 21.)  This matter is now ripe for review.  For reasons set forth in detail below, it is

recommended that Petrone's petition be DENIED.

## I.  Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts are presumed correct.  28 U.S.C. § 2254(e)(1); *see also Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012); *Montgomery v. Bobby*, 654 F.3d 668, 701 (6th Cir. 2011).  The state appellate court summarized the facts underlying Petrone's conviction as follows:

> [*P2]  Appellant graduated from Cuyahoga Falls High School in 1982.  He and his wife, Sue Petrone, lived in Cuyahoga Falls. They separated in 2006 and Sue moved into a house on the same street as appellant.

> [*P3]  Sue and appellant went to high school with Kevin Ciptak.  At a class reunion in 2007, Sue and Ciptak became reacquainted.  Ciptak was also separated from his wife at the time, and he and Sue began to date in an on-and-off relationship.

> [*P4]  At a concert in 2008, Ciptak approached appellant.  Ciptak told appellant that he was a big and powerful man and was not afraid of appellant.  Appellant explained that there were problems in his marriage and asked Ciptak to leave his family alone unless he and Sue divorced.  Ciptak and appellant shook hands and parted ways.

> [*P5]  While Ciptak was dating Sue, appellant continued to try to get back together with Sue and indicated to her that he was jealous of Ciptak.  He also told a friend that Ciptak was playing with fire.  During the summer of 2010 when Sue and Ciptak had stopped seeing each other, Sue and appellant spent a weekend together at Lake Erie.

> [*P6]  In August of 2010, Sue and Ciptak began seeing each other again.  On Friday, September 17, 2010, she and Ciptak went to a concert together in Pittsburgh.  On Saturday, September 18, 2010, Sue hosted a bonfire at her home for her daughter's volleyball team.  Appellant came over to help with the bonfire.  After falling asleep by the fire pit, appellant did not want to walk home so he crawled into bed with Sue and slept over.

> [*P7]  The next morning, appellant told Sue that a little birdie told him that Sue was with Ciptak on Friday night.  When Sue told appellant it was none of his business, appellant became angry.  Sue talked to him about getting a divorce, a

conversation she estimated she had initiated at least a hundred times.

[*P8]  Appellant returned home, intending to prepare his boat for winter storage and attend the Cleveland Browns game in Cleveland.  He and Sue continued to text each other.  Sue sent appellant a text which read, "As much as ud like 2 pt ur finger @ Kevin as the reason and prob ur wrong.  I dnt want 2 b w you bcuz I want 2 b w him.  He feels exactly like u do as far as being frustrated and upset w me.  I think moving will be best 4 me.  I hope u will support that wen the time comes."  Tr. 296-297.

[*P9]  Appellant went to the Browns game, while Ciptak watched the same game at Brubaker's Pub in Cuyahoga Falls.  He asked Sue to meet him there.  She arrived late, and Ciptak drank five beers while waiting for Sue to arrive.  Sue and Ciptak had an argument at the bar and Sue left.

[*P10]  Ciptak paid his bar tab and tried to call Sue on her cell phone.  When she did not answer, he drove to her house.  Sue did not answer the door.  Ciptak drove by appellant's house, where appellant was outside raking leaves.  According to appellant Ciptak gave him the finger, but Ciptak claimed he waved at appellant.  Appellant decided that he needed to talk to Ciptak, and got in his truck to follow him.

[*P11]  Ciptak proceeded to Route 8 South, headed toward a tree farm in Jackson Township which he needed to visit in connection with his employment in landscaping.  He noticed appellant following him down 8 South and again on 77 South.  He exited the highway at Arlington Road, and appellant followed. Ciptak pulled into a parking lot of a church that appeared to be holding services in an effort to lose appellant.  Appellant did not pull into the church.  After several minutes Ciptak left the church lot, but found appellant waiting for him at the next intersection.

[*P12]  When Ciptak arrived at the tree farm, appellant did not follow him into the driveway. Ciptak found no one around the tree farm.  As he began to leave the driveway, appellant was driving toward him.  At this point, Ciptak became angry and got out of his vehicle, yelling at appellant, "What the bleep are you doing here.  What the hell, you know, what are you trying to do?" Tr. 153.

[*P13]  Appellant opened his door with one foot on the running board. Ciptak saw a gun pointed toward him and heard a popping sound.

[*P14]  Donna Allen was de-burring her horses' manes and tails in her barn next to the tree farm.  She heard someone yell, "What do you want, mother fucker?" several times.  She then heard five or six rapid gunshots.  While Allen's husband

-3-

took the kids in the house and called 911, Allen grabbed some towels and went next door to administer first aid.  Ciptak was on the ground bleeding profusely. He was conscious but in a lot of pain.

[*P15]  Police arrived on the scene and Ciptak was able to identify appellant as the man who shot him.  He was transported to Mercy Medical Center where he was treated by Dr. Peter Boutsicaris, a trauma surgeon.  Dr. Boutsicaris observed a gunshot wound in Ciptak's lower abdomen which was spurting blood, a gunshot wound to his upper left arm and a gunshot wound to his right hand.  Ciptak was rushed into surgery to control the bleeding from his abdomen wound, which would have killed him in a matter of a few minutes to an hour.  After reviewing the CAT scan, Boutsicaris determined that the bullet which caused the most injury entered Ciptak through the upper buttock area and exited through his abdomen, traveling back to front and right to left.  Ciptak's blood alcohol level was determined to be .04.

[*P16]  Later analysis of Ciptak's clothing revealed no gunshot residue, meaning he was beyond a range of six and a half to seven feet from the muzzle of the revolver when he was shot.  Analysis of the fibers of the clothes Ciptak was wearing revealed that the back of his shirt showed signs of a bullet entrance, while the front of his shorts demonstrated a bullet exit.

[*P17]  Meanwhile, appellant stopped at Sue's home and told her he was taking off for a few days to clear his head.  He turned off his cell phone and took the battery out.  Appellant headed to southern Ohio, thinking he would "chill out" at property he owned there.  However, he changed his mind and decided to drive down I-70 to clear his head.  He drove to Colorado, where he turned his phone on and called his father.  His father told appellant to turn himself in.  Appellant then drove to his daughter's home in Houston, Texas, where she urged appellant to turn himself in.  He ultimately left his truck in a parking lot of a hotel in Winnie, Texas, and drove to Cincinnati with his daughter where his father picked him up.  On September 22, 2011, appellant turned himself in at the Jackson Township Police Department.

*State v. Petrone*, 2012 Ohio App. LEXIS 789, 2012-Ohio-911 at ¶¶2-17 (Ohio Ct. App., Mar. 5, 2012).

## II.  Procedural History

### A.  Conviction

During its September 2010 term, a Stark County Grand Jury charged Petrone with one

count of attempted murder in violation of Ohio Revised Code ("O.R.C.") §§ 2923.02(A) & 2903.02(A) and one count of felonious assault in violation of O.R.C. § 2903.11(A)(2).  (ECF No. 17-1, Exh. 1.)  Both carried firearm specifications.  *Id.*  On February 28, 2011, a trial ensued where Petrone was represented by attorney Kerry O'Brien (ECF No. 17-1, Exhs. 3 & 4.)  On March 2, 2011, a jury found Petrone guilty of felonious assault and the firearm specification, but not guilty of attempted murder.  (ECF No. 17-1, Exh. 4.)  Petrone was given an aggregate eight-year prison term for felonious assault together with the firearm specification.  *Id.*  He was also ordered to pay a fine of $10,000.  *Id.*

**B.   Direct Appeal**

On March 31, 2011, Petrone, through new counsel James L. Burdon and Thomas R. Houlihan, filed a Notice of Appeal with the Court of Appeals for the Fifth Appellate District ("state appellate court") raising the following assignments of error:

1.   Appellant was denied his constitutional right to a fair trial by the trial court's prejudicial remark expressing the court's personal opinion that appellant's castle doctrine defense was irrelevant.

2.   The trial court made a clear error of law in failing to properly instruct the jury on the statutorily-created castle doctrine.

3.   Appellant's conviction was not supported by the manifest weight of the evidence.

4.   Appellant was denied his constitutional right to a fair trial by the trial court's order denying appellant access to the sworn grand jury testimony of the alleged victim, Kevin Ciptak, and thereafter permitting the prosecution to cross-examine appellant with his own sworn grand jury testimony.

5.   The trial court denied appellant his constitutional right to a fair trial by refusing to permit the testimony of appellant's expert regarding the effects a gunshot has upon clothing.

-5-

(ECF No. 17-1, Exhs. 5 & 6.)

On March 5, 2012, Petrone's conviction was affirmed.

On April 18, 2012, Petrone, represented by counsel, filed a Notice of Appeal with the Supreme Court of Ohio raising the following proposition of law:

1.    In a criminal trial involving the "Castle Doctrine," R.C. 2901.05(B), the trial court must clearly instruct the jury that: 1) a person is presumed to have acted in self defense when using defensive force that is intended or likely to cause death or great bodily harm to another if the person against whom the defensive force is used is in the process of unlawfully and without privilege to do so entering, or has unlawfully and without privilege to do so entered, the residence or vehicle occupied by the person using the defensive force; 2) a person preventing another from entering or expelling another from his/her home or vehicle is allowed to use deadly force or force great enough to cause serious bodily harm, and there is no duty to retreat when inside one's home or vehicle.

(ECF No. 17-1, Exhs. 10 & 11.)

On July 5, 2012, leave to appeal was denied.  (ECF No. 17-1, Exh. 13.)

**C.    Delayed Motions for Leave Seeking New Trial**

While his direct appeal was pending, on February 17, 2012, Petrone, represented by counsel, filed an application for leave to file a delayed motion for new trial.  (ECF No. 14.) Therein, Petrone argued that new evidence concerning the victim's wounds warranted a new trial.  (ECF No. 17-1, Exh. 14.)  On April 18, 2012, the court denied the motion finding it was untimely.  (ECF No. 17-1, Exh. 17.)

On May 15, 2012, Petrone, through counsel, filed a Notice of Appeal (ECF No. 17-1, Exh. 18) arguing that "[t]he trial court erred in denying appellant's motion for leave to file a motion for a new trial, and in thus denying review of the substantive and legal merits of a motion for new trial."  (ECF No. 17-1, Exh. 19.)  On March 9, 2013, the state appellate court affirmed the trial

court's judgment.  (ECF No. 17-1, Exh. 22.)

On May 2, 2013, Petrone, represented by counsel, filed a Notice of Appeal with the

Supreme Court of Ohio raising the following propositions of law:

1. In a criminal appeal from a denial of leave to file a motion for a new trial,
   where evidence of prosecutorial misconduct in withholding material
   evidence from the defendant prior to trial, or of ineffective assistance of
   counsel at trial, is first discovered during oral arguments before the court of
   appeals, the cause must be reversed and remanded to the trial court for a
   hearing for a new trial.

2. It is error for a trial court to deny as untimely a motion for leave to file a
   delayed motion for new trial where the motion is based upon new evidence
   in the form of an expert's affidavit and the motion was promptly filed within
   four days of receipt of the affidavit by defense counsel.

(ECF No. 17-1, Exh. 24.)

On September 4, 2013, the Ohio Supreme Court declined to accept jurisdiction of the

appeal pursuant to S. Ct. Prac. R. 7.08(B)(4).  (ECF No. 17-1, Exh. 26.)

While he was still appealing the previous denial of his motion for a new trial, Petrone,

through counsel, filed a renewed application for leave to file a delayed motion for a new trial on

July 24, 2013.  (ECF No. 17-1, Exh. 27.)  This time, Petrone asserted that the new evidence

consisted of the termination of a criminologist from the Canton-Stark County Crime Lab,

Michael Short, who allegedly falsified documents according to a newspaper article.  (ECF No.

17-1, Exh. 30.)  On October 3, 2013, the court denied the motion finding that the evidence

presented did "not disclose a strong probability that it would change the result if a new trial were

granted..."  (ECF No. 17-1, Exh. 32.)

On September 11, 2013, Petrone, through counsel, filed a third motion seeking leave to file

a delayed motion for a new trial, which, on October 11, 2013, was also denied.  (ECF No. 17-1,

-7-

Exhs. 33 & 36.)

On October 30, 2013, Petrone, through counsel, filed a notice of appeal with the state

appellate court challenging the October 3rd and October 11th decisions.  (ECF No. 17-1, Exh. 37.)

The following assignments of error were raised:

1. The trial court erred and/or abused its discretion in denying appellant's motion for new trial based upon newly discovered evidence of chronic professional malfeasance by the State's expert criminologist Michael Short.

2. The trial court erred and/or abused its discretion in denying appellant's third motion for leave to file a motion for new trial which based upon newly discovered evidence of apparent prosecutorial misconduct regarding the surprise reversal of opinion of appellant's expert witness Dr. Boutsicaris.

3. The trial court erred and/or abused its discretion in denying appellant's alternative claim of ineffective assistance of counsel as grounds for a new trial.

(ECF No. 17-1, Exh. 38.)

On August 4, 2014, the assignments of error were overruled and the judgment affirmed.

(ECF No. 17-1, Exhs. 41 & 42.)

On September 17, 2014, Petrone, through counsel, filed a notice of appeal with the Supreme

Court of Ohio raising one proposition of law:

1. When a prosecutor knowingly allows perjury by an expert witness in a criminal case, the defendant's constitutional right to a fair trial is violated, and the defendant has the right to a new trial.

(ECF No. 17, Exhs. 43 & 44.)

On March 11, 2015, the Supreme Court of Ohio declined to accept jurisdiction of the appeal

pursuant to S. Ct. Prac. R. 7.08(B)(4).

**D.    Federal Habeas Petition**

-8-

On October 3, 2013, Petrone filed a Petition for Writ of Habeas Corpus asserting the following grounds for relief:

> GROUND ONE: Erroneous and Prejudicial Jury Instructions/Ineffective Assistance.

> GROUND TWO: Due Process/Denial of Expert Witness/Ineffective assistance.

> GROUND THREE: The issue of whether State's expert witness gave false testimony or otherwise committed professional misconduct as it relates to Petitioner's trial, and the ramifications thereof, as detailed in the Essential Facts above, is currently pending on a Motion for a New Trial in the Stark County Court of Common Pleas.

> GROUND FOUR: Prosecutorial Misconduct/Brady Violation/Ineffective Assistance/Witness Perjury.

(ECF No. 1-1.)

On February 18, 2014, Petrone filed a motion for a stay and abeyance until his pending appeal was resolved. (ECF No. 7.) Respondent did not oppose. (ECF No. 10.) On April 15, 2014, the Court granted the motion. (ECF No. 11.)

On March 26, 2015, Petrone filed a "Notice of Exhaustion" and requested that the stay be lifted. (ECF No. 12.) The stay was lifted on April 20, 2015.

### III. Exhaustion and Procedural Default

**A. Exhaustion Standard**

Petitioners must exhaust their state remedies prior to raising claims in federal habeas corpus proceedings. *See* 28 U.S.C. § 2254(b),( c). This requirement is satisfied "when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). However, if relief is no longer available in state court, exhaustion can be rendered

-9-

moot:  "If no remedy exists, and the substance of a claim has not been presented to the state courts, no exhaustion problem exists; rather, it is a problem of determining whether cause and prejudice exist to excuse the failure to present the claim in the state courts." *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994); *see Buell v. Mitchell*, 274 F.3d 337, 349 (6th Cir. 2001).

**B.   Procedural Default Standard**

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice. *See Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir.2006) (*citing Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)). A claim may become procedurally defaulted in two ways. *Id*. First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court. *Id.*; *see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). If, due to petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.[1] *Id.*

---

[1]  In *Maupin*, the Sixth Circuit established a four-step analysis to determine whether a claim is procedurally defaulted.  785 F.2d at 135.  Under this test, the Court decides (1) whether the petitioner failed to comply with an applicable state procedural rule, (2) whether the state courts actually enforced the state procedural sanction, (3) whether the state procedural bar is an "independent and adequate" state ground on which the state can foreclose federal review, and (4) whether the petitioner has demonstrated "cause" and "prejudice." *Id*. at 138-39; *Barkley v. Konteh*, 240 F.Supp.2d 708 (N.D. Ohio 2002).  "In determining whether a state court actually enforced a procedural rule, we apply the 'plain statement' rule of *Michigan v. Long*, 463 U.S. 1032, 103 S. Ct. 3469, 77 L. Ed. 2d 1201 (1983)." *Lovins v. Parker*, 712 F.3d 283, 296 (6th Cir. 2013) ("a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar.") (citations omitted).

-10-

Second, a petitioner may also procedurally default a claim by failing to raise and pursue that claim through the state's "ordinary appellate review procedures." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999). If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, it is procedurally defaulted. *Engle v. Isaac*, 456 U.S. 107, 125 n. 28 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991); *Lovins*, 712 F.3d at 295 ("a claim is procedurally defaulted where the petitioner failed to exhaust state court remedies, and the remedies are no longer available at the time the federal petition is filed because of a state procedural rule.") This second type of procedural default is often confused with exhaustion. Exhaustion and procedural default, however, are distinct concepts. AEDPA's exhaustion requirement only "refers to remedies still available at the time of the federal petition." *Engle*, 456 U.S. at 125 n. 28. Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review. *Id*. In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal. *Id*. Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted. *Id*.

A claim is adequately raised on direct appeal if it was "fairly presented" to the state court. To fairly present a claim to a state court a petitioner must assert both the legal and factual basis for his claim. *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). Accordingly, a "petitioner must present his claim to the state courts as a federal constitutional issue--not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984). A

-11-

petitioner can take four actions in his brief which are significant to the determination as to whether a claim has been fairly presented as a federal constitutional claim: "(1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law." *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003).

A petitioner's procedural default, however, may be excused upon a showing of "cause" for the procedural default and "actual prejudice" from the alleged error. *See Maupin*, 785 F.2d at 138-39. "Demonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule." *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006) (*quoting Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Meanwhile, "[d]emonstrating prejudice requires showing that the trial was infected with constitutional error." *Id.* Where there is strong evidence of a petitioner's guilt and the evidence supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied. *See United States v. Frady*, 456 U.S. 152, 172 (1982); *Perkins v. LeCureux*, 58 F.3d 214, 219-20 (6th Cir. 1995); *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994). Prejudice does not occur unless petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been different. *See Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003) (*citing Strickler v. Greene*, 527 U.S. 263, 289 (1999)).

Finally, a petitioner's procedural default may also be excused where a petitioner is actually innocent in order to prevent a "manifest injustice." *See Coleman v. Thompson*, 501 U.S.

-12-

722, 749-50 (1991).  Conclusory statements are not enough   a petitioner must "support his

allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific

evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at

trial."  *Schlup v. Delo*, 513 U.S. 298, 324 (1995); *see Jones v. Bradshaw*, 489 F.Supp.2d 786,

807 (N.D.Ohio 2007).

## C.  Application to Petrone

Respondent contends that all four of Petrone's grounds for relief are procedurally

defaulted.  (ECF No. 17 at 13.)

### 1.  Ground One: Jury Instructions

Respondent construes ground one as raising two arguments.  (ECF No. 17 at 17-21.)

First, Petrone argues that the jury instructions given at trial were erroneous and/or prejudicial.

Second, Petrone raises a related argument that trial counsel was ineffective for failing to object to

the same jury instructions.  The Court agrees.[2]

With respect to Petrone's claim that the trial court's "castle doctrine" jury instruction was

incorrect or confusing, Respondent asserts that Ohio's contemporaneous objection rule forecloses

federal review.  (ECF No. 17 at 17-19.)  Petrone does not challenge the assertion that trial

counsel failed to object.  The state appellate court specifically found that Petrone's counsel did

not object and noted as follows:

> [*P67]  Before trial, the court provided counsel with the instructions he intended
> to give to the jury concerning self defense.  Tr. 2/23/11, 35-36.  Appellant did not
> offer alternative instructions, nor did he object to the court's instructions as given

---

[2]  The latter "argument"   that counsel was ineffective for failing to object   is a
perfunctory one-sentence conclusion rather than a developed argument.  (ECF No. 1-1 at
19.)

at trial.  Crim. R. 30(A) provides that on appeal, a party may not assign as error the giving or failure to give any instructions unless the party objects before the jury retires to consider its verdict.  Because appellant failed to object, we must find plain error in order to reverse.  *State v. Long* (1978), 53 Ohio St.2d 91, 372 N.E.2d 804; Crim.R. 52(B).  In order to prevail under a plain error analysis, appellant bears the burden of demonstrating that the outcome of the trial clearly would have been different but for the error.  *Long*, supra.  Notice of plain error "is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice."  *Id*. at paragraph three of the syllabus.

*Petrone*, 2012-Ohio-911 at ¶67.

The first argument in ground one is indeed procedurally defaulted.  It is well-established that a petitioner waives an alleged error when he fails to make a contemporaneous objection. *Osborne v. Ohio*, 495 U.S. 103, 124, 110 S. Ct. 1691, 109 L. Ed. 2d 98 (1990) (recognizing Ohio's long-standing contemporaneous objection rule).  Moreover, the Sixth Circuit has held that Ohio's contemporaneous objection rule constitutes an adequate and independent state ground barring federal review absent a showing of cause for the waiver and resulting prejudice.  *See e.g. Condon v. Wolfe,* 310 Fed. App'x 807, 813 (6th Cir. 2009); *White v. Mitchell*, 431 F.3d 517, 525 (6th Cir. 2005); *Mason v. Mitchell*, 320 F.3d 604, 635 (6th Cir. 2003); *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001).  Here, Petrone did not object to the complained of jury instruction, resulting in the state appellate court's review under a plain error analysis.  Accordingly, the first three elements of the *Maupin* test are satisfied as Petrone did not comply with the contemporaneous objection rule, the state appellate court actually enforced the rule by applying a plain error analysis,[3] and the Sixth Circuit has recognized that said rule constitutes an

---

[3]  "By employing plain error review, the Ohio Court of Appeals acknowledged the presence of a procedural bar."  *Condon*, 310 Fed. App'x at 814; *see also Hinkle*, 271 F.3d at 245 ("[We] view a state appellate court's review for plain error as the enforcement of a procedural default.")

-14-

"independent and adequate" state ground on which the state can foreclose federal review. As such, ground one is procedurally defaulted under *Maupin* to the extent it challenges the jury instructions given at trial.

Moreover, Petrone has failed to demonstrate either cause or prejudice to excuse the default. To establish "cause," Petrone must show "something external to the petitioner, something that cannot fairly be attributed to him[;] . . . some objective factor external to the defense [that] impeded . . . efforts to comply with the State's procedural rule." *Coleman*, 501 U.S. at 753. *See also Franklin*, 434 F.3d at 417; *Maples v. Stegall*, 340 F.3d 433, 438 (6th Cir. 2003). Petrone does, however, argue that trial counsel was ineffective for failing to object. Regardless of whether the Court considers this a separate and distinct ground for relief or merely an assertion of cause to excuse the default of Petrone's underlying jury instructions claim, the Court is compelled to conclude ground one is not reviewable. "[A]n ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted." *Hodges v. Colson*, 727 F.3d 517, 530 (6th Cir. 2013) (*quoting Edwards v. Carpenter*, 529 U.S. 446, 453, 120 S. Ct. 1587, 146 L. Ed. 2d 518 (2000)). As explained by the Sixth Circuit Court of Appeals:

> The "cause" standard in procedural-default cases requires the petitioner to show that "some objective factor external to the defense impeded counsel's efforts" to raise a claim in the state courts. *McCleskey v. Zant*, 499 U.S. 467, 493, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991) (internal quotation marks omitted). Such factors may include interference by officials, an attorney error rising to the level of ineffective assistance of counsel, or a showing of a factual or legal basis for a claim that was not reasonably available. *Id*. at 493-94, 111 S.Ct. 1454. "[A] procedurally defaulted **ineffective-assistance**-of-counsel claim can serve as **cause** to excuse the procedural default of another habeas claim **only if the habeas petitioner can satisfy the 'cause and prejudice' standard with respect to the ineffective assistance claim itself**." *Edwards v. Carpenter*, 529 U.S. 446,

-15-

450-51, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000).

*Wogenstahl v. Mitchell*, 668 F.3d 307, 321 (6th Cir. 2012) (emphasis added).

Petrone, represented by different counsel on direct appeal than at trial, never raised trial counsel's ineffectiveness.  (ECF No. 17-1, Exh. 8.)  As explained by the Sixth Circuit, "Ohio law appears to contemplate two kinds of ineffective assistance of counsel claims, those based only on evidence in the trial record and those based in part on evidence outside the record."  *McGuire v. Warden, Chillicothe Corr. Inst.*, 738 F.3d 741, 751 (6th Cir. 2013).  A claim of ineffective assistance for failing to object, as claimed by Petrone herein, plainly falls into the first category.  As to this type, the *McGuire* court stated that "*res judicata* bars an ineffective assistance of counsel claim that relies entirely on evidence inside the trial record, since such a claim could have been brought on direct appeal." 738 F.3d at 751, *citing State v. Perry*, 10 Ohio St. 2d 175, 226 N.E.2d 104, 108 (Ohio 1967); *see also State v. Cole*, 2 Ohio St.3d 112, 2 Ohio B. 661, 443 N.E.2d 169 (1982); *Combs v. Coyle*, 205 F.3d 269, 275-77 (6th Cir. 2000).  Failure to raise a claim on direct appeal triggers Ohio's *res judicata* rule, which is an independent and adequate state procedural bar.  *See, e.g., Rust v. Zent*, 17 F.3d 155, 160-61 (6th Cir. 1994).  Therefore, since Petrone's ineffective assistance of trial counsel claim would be barred by *res judicata*, it cannot serve as the basis for an independent ground for relief, nor can it be used to excuse the default of his claim that the jury instructions were erroneous.

As such, ground one of the petition should be dismissed as procedurally defaulted.

**2.  Ground Two: Testimony of Dr. Boutsicaris - Failure to Grant New Trial**

Petrone labels his second ground for relief as "Due Process/Denial of Expert Witness/Ineffective Assistance."  (ECF No. 1-1.)  Respondent asserts that ground two is

-16-

procedurally defaulted because the state court determined that Petrone's motion for a new trial

was untimely under Ohio Rule of Criminal Procedure 33 ("Crim R. 33").  (ECF No. 17 at 21-25.)

Crim R. 33(B) requires motions for a new trial on account of newly discovered evidence to be

filed within 120 days after the verdict unless it can be demonstrated by clear and convincing

evidence that the defendant was unavoidably prevented from discovering such evidence during

that time period.

The first two prongs of the *Maupin* test are clearly satisfied as Petrone, by filing his motion

for a new trial almost a year after his verdict, failed to comply with the 120 day time limit.[4]  (ECF

No. 17-1, Exh. 14.)   In addition, the state court unequivocally enforced Crim R. 33, the state

procedural sanction, and expressly found that Petrone's motion was untimely as he failed to

demonstrate by clear and convincing evidence that he could not have learned of the existence of

the evidence supporting his motion with the 120-day time-frame.  (ECF No. 17-1, Exh. 17 at 4-

5.)  The state appellate court agreed and affirmed the denial of the motion for a new trial. (ECF

No. 17-1, Exh. 22.)  A similar issue was addressed by another court of this district:

> Thus, the remaining issue, arising from *Maupin*, for the federal habeas court to
> consider before finding that a procedural default exists is whether the adequate
> and independent state time bar of Ohio Criminal Rule 33 is "firmly established
> and regularly followed" so as to preclude federal habeas review.
>
> As to the issue of whether Ohio's timeliness requirement in Rule 33 motions for a
> new trial is "firmly established and regularly followed," I note first that I have not
> discovered any federal habeas cases specifically addressing this issue.  Unlike the
> situation arising under dismissals for untimeliness in Ohio Appellate Rule 26(B)
> applications where a substantial body of case law on whether the time bar there
> has been enforced or ignored by Ohio courts, the same timeliness issue under Rule

---

[4]  A third motion for a new trial, based on the testimony of Dr. Boutsicaris, was filed
on September 11, 2013 (ECF No. 17-1, Exh. 33), but was also denied as untimely.  (ECF
No. 17-1, Ex. 36.)

33 motions appears not to have been as extensively considered.

However, two recent federal habeas decisions are instructive.  In *Matthews v. Ishee*, the Sixth Circuit recently assumed without deciding that an untimely-filed motion under Ohio Rule 33 would constitute a procedural default unless the petitioner could show cause for the untimeliness and prejudice from failure to reach the constitutional claim.  Similarly, in *Gross v. Jackson*, a decision from the Southern District of Ohio, the federal habeas court concluded that an untimely filing of a Rule 33 motion for a new trial without evidence that the untimeliness was due to an unavoidable failure to discover the factual basis for the motion within the time allowed could constitute a procedural default, although the state court in that case did not rule on the untimely motion for a new trial, and so the state never formally asserted procedural default to the federal court.

Accordingly, on the present record and in light of the cited federal case authority, I recommend finding that the timeliness requirement of Rule 33 is a firmly established Ohio procedural rule capable of providing the basis for a finding of procedural default in a federal habeas matter.  Therefore, I further recommend finding that Moore's first claim for relief be found to be procedurally defaulted because the last decision denying that claim by an Ohio court rested on the adequate and independent state law ground of untimeliness which is firmly established and regularly followed in Ohio.

*Moore v. Brunsman*, No. 3:08 CV 2895, 2010 WL 425055 at *15 (N.D. Ohio Jan. 26, 2010)

(Baughman, M.J.) (footnotes omitted).[5]  A recent United States District Court decision from the

Southern District of Ohio observed that where the state appellate court interpreted Crim R. 33 in

accordance with Ohio law, a federal habeas court is bound by that ruling. *See Veliev v. Warden,*

*Chillicothe Corr. Inst.*, No. 2:12-CV-00346, 2014 WL 4805292, at *13 (S.D. Ohio Sept. 26,

2014) (*citing Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir.2005) (this court must "defer to a state

court's interpretation of its own rules of evidence and procedure"); *Bennett v. Warden, Lebanon*

*Correctional Inst.*, 782 F.Supp.2d 466, 478 (S.D. Ohio March 15, 2011) ("[T]he state courts are

---

[5]  The report and recommendation was adopted by Judge Polster who agreed that Crim R. 33 was an "adequate and independent state law ground precluding federal habeas review." *See* 3:08-cv-02895, ECF No. 30.

-18-

the final authority on state-law issues, the federal habeas court must defer to and is bound by the state court's rulings on such matters.") (*citing Estelle v. McGuire*, 502 U.S. 62, 67â€"68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) ("it is not the province of a federal habeas court to re-examine state-court determinations on state law questions.")).

This Court agrees with the above cases and finds that Ohio Crim R. 33 constitutes an adequate and independent state law ground foreclosing federal habeas relief.  As such, ground two is procedurally defaulted.  Nonetheless, the Court will also address the merits of this claim below.

### 3. Ground Three: Testimony of Michael Short

In ground three, Petrone asserts that the State's expert witness gave false testimony or otherwise committed professional misconduct.[6]  (ECF No. 1-1 at 23.)  In his Traverse, Petrone does not clearly delineate his arguments. Though not framed in terms of a federal constitutional argument, the Court construes ground three as arguing that the denial of his motion for a new trial based on the history of misconduct by Michael Short of the Stark County Crime Lab was erroneous.  (ECF No. 21 at 29-32.)  With respect to ground three, Respondent asserts that it is procedurally defaulted, as it was not fully and fairly presented to every level of the Ohio courts as a distinct federal constitutional claim.  (ECF No. 17 at 25-29.)

First, to the extent Petrone is arguing that the trial court erred under state law in denying his motion for a new trial, such an argument is not cognizable upon habeas review.  The Sixth Circuit addressed a similar claim as follows:

---

[6]  Without any greater explanation, Petrone indicates that this ground for relief was the subject of a motion for new trial in state court.  (ECF No. 1-1 at 23.)

Pudelski's first ground for relief argues that the trial court abused its discretion and misapplied Ohio law when denying his motion for new trial based on newly discovered evidence, and that this ruling and the Eighth District Court of Appeals' affirmance denied him due process of law.  Pudelski does not cite to or identify any federal law that these rulings are contrary to or an unreasonable application of, and even though he invokes the concept of federal due process, his claim is clearly premised on issues of state law.  State law issues are not subject to habeas review, *see Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991), and this Court can review the denial of Pudelski's motion for new trial only for constitutional error.  To establish a constitutional due process claim, Pudelski must demonstrate that the trial court's denial of his motion for new trial was "so egregious" that it violated his right to a fundamentally fair trial.  *See Fleming v. Metrish*, 556 F.3d 520, 535 (6th Cir. 2009); *Baze v. Parker*, 371 F.3d 310, 324 (6th Cir. 2004).

*Pudelski v. Wilson*, 576 F.3d 595, 610 (6th Cir. Ohio 2009), *cert. denied* 560 U.S. 904, 130 S. Ct. 3274 (2010).

As such, the question for purposes of procedural default is whether Petrone fairly presented ground three to the state courts not only as an improper ruling under Ohio law, but also as a federal constitutional claim.  The Sixth Circuit, in *Pudelski*, also explained the concept of "fair presentation" as follows:

Ordinarily, state prisoners must exhaust available state remedies by, among other things, fairly presenting their federal claims to the state courts before petitioning for a federal writ of habeas corpus.  *See* 28 U.S.C. § 2254(b), (c); *Whiting v. Burt*, 395 F.3d 602 (6th Cir. 2005).  Due to longstanding policies of comity and respect between state and federal courts, a habeas petitioner must give the state courts the first opportunity to consider and rule upon the federal claims the prisoner wishes to use to attack his state court conviction.  *Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971).  A petitioner need not cite federal law "book and verse" to fairly present a claim, *id*. at 278, 92 S.Ct. 509, but the factual and legal underpinnings of the claim must be presented as a federal claim to the state courts,  *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir.2000).

*Pudelski*, 576 F.3d at 605.  A petitioner can take four actions in his brief which are significant to the determination as to whether a claim has been fairly presented as a federal constitutional

-20-

claim: "(1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law." *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003); *see also Pudelski*, 576 F.3d at 605-606; *McMeans*, 228 F.3d at 681.

Where a petitioner has failed to fairly present a federal claim to the state courts, and a state procedural rule now prohibits the state court from considering it, the claim is procedurally defaulted. *Martin v. Mitchell*, 280 F.3d 594, 603 (6th Cir. 2002). "While in such situations the exhaustion requirement is technically satisfied because there are no longer any state remedies available to the petitioner, *see Coleman v. Thompson*, 501 U.S. 722, 732, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991), the petitioner's failure to have the federal claims considered in the state courts results in a procedural default of those claims that bars federal court review." *Pudelski*, 576 F.3d at 605.

The Court finds Petrone failed to fairly present his third ground for relief to the state courts as a federal due process claim, *i.e.* the denial of a fundamentally fair trial.  While Petrone did appeal the denial of his motion for new trial to the state appellate court, he did so solely on the basis of state law.  (ECF No. 17-1, Exh. 38 at 8-13.)  In his brief before the state appellate court challenging the October 3, 2013 denial of his petition, Petrone asserted in his first assignment of error  that "[t]he trial court erred and/or abused its discretion in denying appellant's motion for new trial based upon newly discovered evidence of chronic professional malfeasance by the state's expert criminologist Michael Short." *Id*. at 8.  Nowhere in his appellate brief did Petrone clearly assert a due process violation, deprivation of a fundamentally fair trial, or reference any

provision of the United States Constitution.  (ECF No. 17-1, Exh. 38 at 8-13.)  Indeed, the words "due process" or "fundamentally fair trial" do not appear anywhere in Petrone's argument supporting his first assignment of error.  *Id*.  As pointed out by Respondent, Petrone's argument does not cite a *single* federal case.  *Id*.  In addition, the Ohio cases cited do not address a federal due process argument.[7]  The two other Ohio cases cited by Petrone merely argue violations of Ohio Rule of Evidence 702. (ECF No. 17-1, Exh. 38 at 11, *citing State v. Tomlin*, 590 N.E.2d 1253, 63 Ohio St. 3d 724 (Ohio 1992); *State v. Roush*, 2013 Ohio App. LEXIS 3201, 2013-Ohio-3162 (Ohio Ct. App., July 18, 2013).

In a very short reply brief before the state appellate court, Petrone devotes only two sentences to his argument concerning Mr. Short.  (ECF No. 17-1, Exh. 40 at 3.)  Again, there is no citation to federal cases or state cases employing a federal constitutional analysis.  *Id*.  In his concluding sentence, Petrone does state that "[t]he time is now ripe for this Court to address the issue of the combined effect of both of these tainted witnesses on Petrone's right to a fair trial."  *Id*.  This passing reference to a "fair trial," however, is insufficient.  "Bald assertions in brief headings alleging a constitutional violation are insufficient to constitute fair presentment."  *Kirksey v. Clipper*, 2014 WL 1117834 at * 9 (N.D. Ohio March 17, 2014) (citing *Blackmon v. Booker*, 394 F.3d 399, 400-401 (6th Cir. 2004)).  Rather, a petitioner must "develop [] cogent arguments regarding those rights beyond the naked assertion that they were violated."  *Blackmon*,

---

[7]  Petrone cited five Ohio cases wherein Michael Short also testified merely to illustrate the extent of his expertise.  *See State v. Dunn*, 2009 Ohio App. LEXIS 1434, 2009-Ohio-1688 at ¶¶ 64-81 (Ohio Ct. App., Apr. 6, 2009); *State v. Rollins*, 2008 Ohio App. LEXIS 5109, 2008-Ohio-6116 at ¶17 (Ohio Ct, App., Nov. 24, 2008); *State v. McCroskey*, 2008 Ohio App. LEXIS 21412008-Ohio-2534 at ¶19 (Ohio Ct. App., May 19, 2008); *State v. Walker*, 2006-Ohio-6240 at ¶¶24-34; *State v. Lang*, 129 Ohio St.3d 512, 954 N.E.2d 596, 2011-Ohio-4215 512 at ¶¶21, 25-26.

394 F.3d at 400-401.  Moreover, "[g]eneral allegations of the denial of rights to a 'fair trial' and 'due process' do not 'fairly present' claims that specific constitutional rights were violated." *McMeans*, 228 F.3d at 681.

The state appellate court did not consider whether the trial court's denial of Petrone's motion for new trial constituted a violation of his federal due process rights or deprived him of a fundamentally fair trial, as such an argument was not presented.  (ECF No. 17-1, Exh. 41.)

Assuming *arguendo* that Petrone's habeas petition actually attempts to raise a due process/deprivation of a fundamentally fair trial argument, he did not fairly present such a claim through the requisite levels of appellate review.[8]  Further, there does not appear to be any avenue of state relief remaining to him.  The Court, therefore, finds Petrone's third ground for relief is procedurally defaulted.  Furthermore, there is no cause or prejudice to excuse the default.  *See Wright v. Lazaroff*, 643 F.Supp.2d 971, 986 (S.D. Ohio 2009) ("If petitioner fails to fairly present his claims through the requisite levels of state appellate review to the state's highest court . . . ., and if no avenue of relief remains open or if it would otherwise be futile for petitioner to continue to pursue his claims in the state courts, the claims are subject to dismissal with prejudice as waived.")

### 4. Ground Four: Testimony of Dr. Boutsicaris - *Brady* Violation

Respondent construes ground four as raising two arguments.  (ECF No. 17 at 29-34.) First, Petrone argues that the prosecutor was aware of the allegedly perjured testimony of a

---

[8]  It bears noting that Petrone appealed the state appellate court's decision to the Ohio Supreme Court.  (ECF No. 17, Exhs. 43 & 44.)  Nonetheless, Petrone's memorandum in support of jurisdiction abandoned any argument with respect to Mr. Short's testimony. *Id*.

witness, Dr. Boutsicaris.  By failing to inform him of the perjury, Petrone contends a *Brady* violation resulted.  (ECF No. 1-1 at 23-27.)  Second, Petrone raises a related argument that trial counsel, if he was informed of the change in Dr. Boutsicaris's testimony, was ineffective by failing to take any action.  *Id*. at 26.  The Court agrees that ground four raises these two related arguments.[9]

As with ground two, Respondent asserts that ground four is procedurally defaulted because the state court determined that Petrone's motions for a new trial, first raising these arguments, were untimely under Ohio R. Crim P. 33.  (ECF No. 17-1, Exhs. 14, 17, 33, 36.)  As stated above in the discussion addressing ground two, the *Maupin* test is clearly satisfied as Petrone, by filing his earliest motion for a new trial almost a year after his verdict, failed to comply with the 120 day time limit.  (ECF No. 17-1, Exhs. 14 & 33.)   It is undisputed that the state courts unequivocally enforced Crim R. 33, the state procedural sanction, finding Petrone's motions were untimely as he failed to demonstrate by clear and convincing evidence that he could not have learned of the existence of the evidence supporting his motion with the 120-day time-frame.  (ECF No. 17-1, Exhs. 17 & 36.)  The state appellate court agreed and affirmed the denial of the motions. (ECF No. 17-1, Exhs. 22 & 41.)  As Ohio Crim R. 33 constitutes a firmly established Ohio procedural rule capable of providing the basis for a finding of procedural default, ground four   like ground two before it   is defaulted.   Finally, to the extent ground four attempts to raise another ineffective assistance of trial counsel claim, such an argument, having never been raised on direct appeal, is procedurally defaulted as discussed in ground one *supra*.

---

[9]  As in ground one, the second "argument"   that counsel was ineffective in ground four is a perfunctory one-sentence conclusion rather than a developed argument.  (ECF No. 1-1 at 26.)

-24-

Nonetheless, the Court also addresses the merits of this claim below.

### 5. Excusing Procedural Default

Unless Petrone can show sufficient cause and prejudice, all of his grounds for relief are procedurally defaulted.  In his Traverse, Petrone "concedes that the issues of the jury instructions, ineffective assistance of counsel, and the issues involving Michael Short, standing alone, were not fully exhausted in the Ohio Courts."  (ECF No. 21 at 32.)  Furthermore, Petrone sets forth no cause for his default and does not assert prejudice.  Finally, while a procedural default may be excused to prevent a "manifest injustice," Petrone has not raised a credible claim of actual innocence.

## IV.  Review on the Merits

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.  *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997).  The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

Clearly established federal law is to be determined by the holdings of the United States Supreme Court.  *See Parker v. Matthews,* 132 S. Ct. 2148, 2012 WL 2076341, *6 (U.S. Jun. 11,

2012); *Renico v Lett,* 559 U.S.   , 130 S.Ct. 1855, 1865-1866 (2010); *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005).  However, an explicit statement by the Supreme Court is not mandatory; rather, "the legal principles and standards flowing from [Supreme Court] precedent" also qualify as "clearly established law." *Ruimveld*, 404 F.3d at 1010 (*quoting Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir. 2002))  The Supreme Court has indicated, however, that circuit precedent does not constitute "clearly established Federal law, as determined by the Supreme Court." *Parker*, 2012 WL 2076341, *6; *Howes v. Walker,* 132 S.Ct. 2741, 2012 WL 508160 (2012).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413.  By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*  However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.  Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law. *Id.* at 410-12.  "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th Cir. 2006) (*citing Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

In *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011), the Supreme Court held that as long as "fairminded jurists could disagree on the correctness of the state court's decision," relief is precluded under the AEDPA.  *Id*. at 786 (internal quotation marks omitted).  The Court admonished that a reviewing court may not "treat[ ] the reasonableness question as a test of its confidence in the result it would reach under *de novo* review," and that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."  *Id.* at 785.  The Court noted that Section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems" and does not function as a "substitute for ordinary error correction through appeal."  *Id*. (internal quotation marks omitted).  Therefore, a petitioner "must show that the state court's ruling ... was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Id*. at 786 87.  This is a very high standard, which the Supreme Court readily acknowledged.  *See id.* at 786 ("If this standard is difficult to meet, that is because it is meant to be.")

**A.  Grounds Two and Four: Testimony of Dr. Boutsicaris**[10]

Petrone labels his second ground for relief as "Due Process/Denial of Expert Witness/Ineffective Assistance," though he fails to develop any meaningful argument.  Notably, despite being represented by counsel, Petrone's brief in support of the petition contains no real

_____

[10]  In his Traverse, Petrone essentially concedes that grounds two and four are identical, as they both involve the testimony of Dr. Boutscaris and revolve around his claim the motion for a new trial should have been granted due to prosecutorial misconduct/*Brady* violation.  (ECF No. 21 at 17.)

legal argument with respect to ground two, and is completely bereft of legal citations.[11]  (ECF No. 1-1 at 19-23.)  Instead, Petrone discusses the testimony of Dr. Boutsicaris, a witness who treated the victim, and generally complains that a new trial was warranted.  *Id*.  Petrone also does not attempt to explain how the state court's denial of his motion for a new trial was contrary to, or involved an unreasonable application of, clearly established *federal* law.  *Id*.  Petrone's Traverse reiterates verbatim the first three pages of his argument from his petition.  (*Compare* ECF No. 1-1 at 19-21 with ECF No. 21 at 17-19.)  The additional discussion only cites federal law as it pertains to his *Brady* claim.  (ECF No. 21 at 21-27.)

The Court deems Petrone's second ground for relief waived.  As discussed in the context of ground three above, an argument that the trial court misapplied Ohio law when denying his motion for a new trial based on newly discovered evidence is not cognizable on habeas review.  To establish a constitutional due process claim, Petrone must demonstrate that the trial court's denial of his motion for a new trial was so egregious that it violated his right to a fundamentally fair trial.  He has failed to develop any meaningful argument on this issue.  It is not this Court's function to develop an argument on a petitioner's behalf, especially where he is represented by counsel.  *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones."); *Meridia Prods. Liab. Litig. v. Abbott Labs.*, 447 F.3d 861, 2006 U.S. App. LEXIS 11680 (6th Cir. May 11, 2006).  While Petrone has discussed

---

[11]  Petrone's "Supplemental Memorandum" is no better.  (ECF No. 13.)  Despite being six pages in length, counsel fails to cite a single case or statute    save for the state courts' decisions in the underlying appeals.

the facts he believes support his claim, he fails to tie the lengthy discussion of Dr. Boutsicaris's testimony to a legal argument that his due process rights were violated.  The Court declines to take the facts cited and weave them into an argument on Petrone's behalf.

In his related fourth ground for relief, Petrone contends that the prosecutor was aware prior to trial that Dr. Boutsicaris was going to change his testimony, that Dr. Boutsicaris perjured himself by saying he only changed his mind the morning he testified, and that the prosecutor committed a *Brady* violation when she failed to inform Petrone of the change in testimony resulting in the alleged perjury.  (ECF Nos. 1-1, 13, 21.)

The Due Process Clause of the Fourteenth Amendment requires the prosecution to disclose evidence in its possession that is both favorable to the accused and material to guilt or punishment. *Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963); *see also Pennsylvania v. Ritchie*, 480 U.S. 39, 57, 107 S. Ct. 989, 94 L. Ed. 2d 40 (1987) (plurality opinion); *United States v. Bagley*, 473 U.S. 667, 674, 105 S. Ct. 3375, 87 L. Ed. 2d 481 (1985). A "defendant's right to discover exculpatory evidence does not include the unsupervised authority to search through the [States's] files." *Ritchie*, 480 U.S. at 59; *see also Weatherford v. Bursey*, 429 U.S. 545, 559, 97 S. Ct. 837, 51 L. Ed. 2d 30 (1977).  The purpose of *Brady* is not to displace the adversary system as the primary means to uncover the truth, but rather to ensure that a miscarriage of justice does not occur.  *Bagley*, 473 U.S. at 675. Therefore, the prosecutor is not required to deliver his entire file to defense counsel, but only to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial.  *Id*.

Though a myriad of opinions from the state appellate courts address the issue of Dr. Boutsicaris's testimony, only one directly, albeit briefly, addressed a *Brady* claim.  (ECF No. 17-

-29-

1, Exh. 36 at 4.)  Petrone attempted to raise such an argument in his third motion for a new trial

and on appeal from the denial of his motions for a new trial.  (ECF No. 17-1, Exh. 33 at 7-8;

Exh. 38 at 16-17.)

In addressing Petrone's manifest weight of the evidence argument on direct appeal, the

state appellate court stated as follows:

> Appellant has not demonstrated that the jury lost its way in failing to acquit him
> on this affirmative defense.  There was evidence that appellant followed Ciptak to
> the tree farm, intending to confront him about Ciptak dating his estranged wife.
> Earlier that day, appellant had asked Sue about seeing Ciptak that weekend, and
> she had responded by engaging him in a conversation about getting a divorce.
> She sent appellant a text earlier that day stating that she wanted to be with Ciptak.
> The only evidence appellant presented that he had a bona fide belief that he was in
> imminent danger of death or great bodily harm was his testimony that two years
> earlier, Ciptak had confronted him in an intimidating manner at a concert and
> Ciptak told appellant he was a big, powerful man.  However, the two parted with a
> handshake that day and did not have a physical altercation.  Appellant testified
> that Ciptak reached inside the cab of the truck, and that's why he shot at Ciptak,
> intending to scare him.  However, he admitted that Ciptak did not have a visible
> weapon, that he himself had opened the door, and that he had one foot on the
> running board.  The forensic evidence demonstrated that Ciptak was shot in the
> back from a distance of greater than six and a half or seven feet.

*State v. Petrone*, 2012-Ohio-911 at ¶81.

The March 18, 2013 decision of the state appellate court, set out the testimony of the

forensic expert, Michael Short and of Dr. Boutsicaris:

*The Forensic Evidence*

[*P19]  Appellee called forensic scientist Michael Short of the Stark County
Crime Lab as an expert witness at trial.  The forensic evidence indicated Ciptak's
clothing contained a number of bullet defects.  His shirt contained three: one at
the lower hem to the right of the center (bullet entrance); an L-shaped defect on
lower left front of shirt to the left of center (bullet exit); and an elongated defect
slightly below and to the left of the second defect (bullet exit).  Ciptak's shorts
contained a bullet defect in the front, exhibiting the physical effects of a bullet
exit: a linear defect with fibers protruding from the inside out, as though stretched

by passage of the bullet.

[*P20]  Short further testified over objection that Ciptak's wounds were
consistent with the conclusions he drew from the clothing.  Appellee's Exhibit 3A
depicted the wound to Ciptak's abdominal region, an "elongated, irregular defect"
typical of an exit wound.  Appellee's Exhibit 3B depicted the wound to his
hip/buttock region.  Short testified this injury is a circular defect indicative of the
circular defect in the back of the shirt.

*The Trial Testimony of Dr. Boutsicaris*

[*P21]  Dr. Peter S. Boutsicaris is a trauma surgeon at Mercy Medical Center who
treated Ciptak on September 19, 2010.  Boutsicaris noted an open bleeding wound
to the left lower abdomen spurting blood; a bleeding gunshot wound to the left
upper arm; and a gunshot wound to the right hand.  When Boutsicaris encountered
Ciptak initially, the patient was "extremely critically ill" and was going into
shock.  He was brought into surgery immediately. Ciptak would otherwise have
died of blood loss due to the active bleeding in his belly.  Boutsicaris testified that
multiple surgeons worked on Ciptak to get his injuries under control.


[*P22]  Boutsicaris testified he is a trauma surgeon and as such his primary focus
in treating a patient is doing what is necessary to save a life.  He does, however,
try to "guess" which way a bullet may have traveled inside the body for purposes
of treatment to determine what may have been injured in the bullet's path.  In this
case, Ciptak sustained an injury to his right back side and left lower abdomen
which he attributed to the path of a single bullet.  At the time of treatment,
entrance versus exit was not relevant to Boutsicaris' immediate lifesaving
measures and thus his notes were not precise.  He emphasized that he is not
trained in forensics.

[*P23]  At trial, however, Boutsicaris testified on direct he had reviewed the
x-rays again on the morning of trial, commenting that his notes were conflicting
so he wanted to take another look.  He stated he reviewed Ciptak's CAT scan
from September 20 and determined the bullet entered back to front, right to left,
based upon several factors: bone fragments pushing inward toward the belly, two
metal fragments in the middle of the belly, placement of the buttock wound higher
than the belly wound, and the general positioning of the wounds consistent with
the hand wounds.

[*P24]  Boutsicaris repeatedly stated his conclusions were based upon supposition:

    * * * *.

-31-

[Dr. Boutsicaris:] So   and the other thing I paid attention to is on the CAT scan, it's like looking at a slice   a bunch of sliced bologna where you're looking at the body in slices going from top to bottom.

And the one wound, the pelvic wound, the one   or the upper buttock was up high, and the one on the belly was down low which means the bullet would go high to low.

Well, assuming two adults are involved in something and a person tends to shoot at waist level or higher, the natural tendency if a bullet's going to enter is if it's going to hit the buttock, it's going to go and it's like a downward pathway.  So you got a bullet going downward unless the person was on the ground shooting upwards which doesn't make sense.

So the probabilities if two people are standing, bullet entering the buttock, going downward and the bullet and the fragments, everything points towards the entry being the pelvis on the right side and exiting the left abdomen.

[Prosecutor:] Okay. So, in other words, back to front?

[Dr. Boutsicaris:] Back to front.

[Prosecutor:] And right to left?

[Boutsicaris:] Right. And that goes along with the hand injuries, too.

[Prosecutor:] And that is in spite of the fact that the records refer to entry and exit both ways?

[Boutsicaris:] Yeah, I would say I was wrong in my initial impression because I   the guy comes in, I'm looking at the bleeding through the front and I'm not measuring the holes.  And usually people get shot facing each other.  So that's, you know, supposition.

[Prosecutor:] Okay. If you were to learn that a forensic expert had analyzed other evidence and come to the conclusion it was back to front

[Defense Trial Counsel:] Objection, Your Honor. The Court: Overruled.

[Prosecutor:]   would you have any reason to disagree with that I guess based on your analysis of the medical records?

-32-

> [Dr. Boutsicaris:]  I don't have an opinion on that because I've never really
> had to analyze forensic evidence in comparison to what I do in my practice.
> So I've no experience in that so I really can't say what I would say.  I would
> have to look at the report to see if it fit my medical opinion.
>
> \* \* \* \*.

*State v. Petrone*, 2013 Ohio App. LEXIS 1044, 2013-Ohio-1138 at ¶¶19-24 (Ohio Ct. App., Mar.

18, 2013).  Later in the same opinion, the state appellate court observed:

> Appellant's argument to the trial court and upon appeal centers upon whether the
> third bullet to strike Ciptak entered from the front (stomach region) or back
> (hip/buttock region).  Appellant argues this was the crucial issue for the jury's
> rejection of appellant's self-defense argument.  However, we disagree that the
> third-bullet issue was the pivotal issue in the case; the jury could easily have
> rejected appellant's self-serving testimony about Ciptak reaching into the truck,
> and his theory of self-defense overall, on a number of bases.

*Id.* at ¶P42

On October 11, 2013, in a decision denying a third motion for a new trial, the state court

found as follows:

> The Court also finds that Defendant's *Brady* claim is not well-taken because the
> change in Dr. Boutsicaris' opinion was not exculpatory evidence.  The change in
> opinion regarding the bullet's point of entrance was, if anything, inculpatory.
> Accordingly, there was no *Brady* violation in the failure to disclose the
> information.  To the extent that there may have been a Criminal Rule 16
> discovery violation, the time to raise that argument would have been at the trial
> when Defendant actually learned of Dr. Boutsicaris' changed  opinion   and
> during the proceedings  immediately after the trial.

(ECF No. 17-1, Exh. 36 at 4.)

The August 4, 2014, the state appellate court reiterated its belief that "[a]s set forth in our

previous Opinion, we disagree that the third-bullet issue was the pivotal issue in the case; the jury

could easily have rejected Appellant's self-serving testimony about Ciptak reaching into the

truck, and his theory of self-defense overall, on a number of bases." *State v. Petrone*, 2014 Ohio

-33-

App. LEXIS 3328, 2014-Ohio-3395 at ¶79 (Ohio Ct. App., Aug. 4, 2014)

The Sixth Circuit has explained that the *Brady* obligation only requires disclosure of evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial. *See Moldowan v. City of Warren*, 578 F.3d 351, 387 (6th Cir. 2009) ("In other words, the Due Process Clause imposes an "absolute duty" on the prosecutor only with regard to certain evidence, *i.e.* "material exculpatory evidence.") (citations and internal quotation marks omitted); *accord Myles v. Curtin*, 2011 U.S. Dist. LEXIS 18065 at **11-12 (E.D. Mich. Feb. 24, 2011) (rejecting petitioner's argument that the prosecutor's failure to test him for Trichomaniasis, a sexually transmitted disease found present in the minor victim, amounted to prosecutorial misconduct as the test was merely potentially useful evidence).

The trial court unambiguously found that Dr. Boutsicaris's opinion did not constitute exculpatory evidence under *Brady*.  (ECF No. 17-1, Exh. 36 at 4.)  The state appellate court decisions, while not expressly addressing *Brady*, clearly stand for the proposition that they do not share Petrone's view that the issue of whether the third-bullet entered the victim from the front or from the back was "pivotal," as the entrance wound does not establish that Petrone acted in self-defense.  As stated in Petrone's brief, the evidence must be material, and materiality is absent if there is not a reasonable probability that the result of the proceeding would have been different.  (ECF No. 21 at 27.)  The state appellate court, in apparent agreement with the trial court's denial of Petrone's *Brady* claim, plainly did not find that Dr. Boutsicaris clarifying his previously disclosed conflicting opinions on the witness stand was critical evidence, noting that the testimony concerning the third bullet was not outcome determinative.  Furthermore, Dr. Boutsicaris was known to the defense, as was, apparently, the contents of his records.  Based

-34-

upon the state appellate court's decision outlining Dr. Boutsicaris's testimony, an independent

forensic expert testified the bullet entered through the back.  *Petrone*, 2013-Ohio-1138 at ¶19.

Dr. Boutsicaris admitted that he never had to analyze forensic evidence.  *Id*. at ¶24.  Petrone does

not cite any law suggesting that a *Brady* claim exists where a known witness offers testimony

that may clarify, if not contradict an earlier conclusion.  As such, Petrone has failed to

demonstrate that the state court's findings were contrary to or an unreasonable application of

clearly established federal law.  As such, his fourth assignment of error is without merit.

### V.  Conclusion

For the foregoing reasons, it is recommended that Petrone's Petition be DENIED.

/s/ Greg White
U.S. MAGISTRATE JUDGE


Date: December 9, 2015



### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**